**Whitney Stark**, OSB No. 090350
whitney@albiesstark.com
**ALBIES, STARK & GUERRIERO**
1 SW Columbia Street, Suite 1850
Portland, Oregon 97204
Tel: (503) 308-4770
Fax: (503) 427-9292
*Local Counsel for Plaintiff*

**Michael A. Josephson***
mjosephson@mybackwages.com
**Andrew W. Dunlap***
adunlap@mybackwages.com
**Richard M. Schreiber***
rschreiber@mybackwages.com
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300

**Richard J. (Rex) Burch***
rburch@brucknerburch.com
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
*\*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF AND
THE PUTATIVE CLASS MEMBERS**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SAMUEL DECARVALHO**, Individually and For Others Similarly Situated<br><br>v.<br><br>**INTEGRATED HEALTHCARE STAFFING, LLC**, an Oregon limited liability company | **Case No.** _____<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>Fair Labor Standards Act – 29 U.S.C. §§ 201, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

PAGE 1 – COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Samuel DeCarvalho (DeCarvalho) brings this collective action to recover unpaid overtime wages and other damages from Integrated Healthcare Staffing, LLC (IHS) under the Fair Labor Standards Act (FLSA).

2. DeCarvalho worked for IHS as a corporate recruiter.

3. Like the Putative Class Members (as defined below), DeCarvalho regularly worked more than 40 hours a week.

4. But IHS never paid these recruiters overtime compensation.

5. Instead of paying overtime, IHS misclassified DeCarvalho and the Putative Class Members as exempt employees and paid them a salary with no overtime wages.

6. IHS's salary pay scheme violates the FLSA by depriving non-exempt employees (DeCarvalho and the Putative Class Members) of overtime wages for all hours worked after 40 in a workweek.

## JURISDICTION & VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. This Court has general personal jurisdiction over IHS because IHS is a domestic limited liability company headquartered in Portland, Oregon.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because IHS maintains its headquarters and principal office in Portland, Oregon, which is in this District and Division.

## PARTIES

10. DeCarvalho was employed by IHS as a corporate recruiter from approximately July 2020 until October 2020.

11.  Throughout his employment, IHS misclassified DeCarvalho as exempt to avoid paying him overtime wages.

12.  Throughout his employment, IHS paid DeCarvalho a salary with no overtime wages when he worked more than 40 hours in a workweek.

13.  But throughout his employment, DeCarvalho regularly worked more than 40 hours a week.

14.  DeCarvalho's written consent is attached as **Exhibit 1**.

15.  DeCarvalho brings this action on behalf of himself and all other similarly situated IHS recruiters who were paid under IHS's salary with no overtime pay scheme.

16.  IHS uniformly misclassifies its recruiters as exempt and pays them a salary with no overtime wages when they work more than 40 hours in a workweek.

17.  The putative collective of similarly situated employees is properly defined as:

> **All salaried recruiters employed by Integrated Healthcare Staffing, LLC at any time during the past 3 years (the "Putative Class Members").**

18.  The Putative Class Members are easily ascertainable from IHS's business and personnel records.

19.  IHS is an Oregon limited liability company with its principal corporate office in Portland, Oregon.

20.  IHS does business throughout the United States and is registered to do business in the State of Oregon.

21.  IHS may be served with process by serving its registered agent: **Jeff Kruse, 10200 SW Greenburg Road, Suite 700, Portland, Oregon 97223**, or wherever he may be found.

/ / /

/ / /

## COVERAGE UNDER THE FLSA

22. At all relevant times, IHS was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, IHS was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. At all relevant times, IHS was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

25. At all relevant times, IHS has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, laptops, pens, paper, and computers—that have been moved in or produced for commerce.

26. At all relevant times, IHS has had and has an annual gross volume of sales made or business done of not less than $1,000,000 each year.

27. At all relevant times, the Putative Class Members were IHS's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

28. At all relevant times, DeCarvalho and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

29. IHS uniformly misclassified the Putative Class Members as exempt and paid them a salary with no overtime wages.

30. As a result of IHS's uniform salary with no overtime pay scheme, the Putative Class Members (which, as noted above, include DeCarvahlo) did not receive premium overtime wages when they worked more than 40 hours in a workweek.

31. IHS applies its illegal salary with no overtime pay scheme regardless of any alleged individualized factors, such as specific job title or precise geographic location.

32. By paying the Putative Class Members a salary with no overtime, IHS did not pay these non-exempt employees at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

33. IHS's uniform salary with no overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

34. IHS provides nationwide medical staffing solutions.

35. To meet its business objectives, IHS employs recruiters to find and place technicians, caregivers, medical assistants, nurses, nurse practitioners, and physicians throughout the country.



36. DeCarvalho and the Putative Class Members worked for IHS as recruiters over the past three years throughout the country.

37. For example, DeCarvalho worked for IHS as a corporate recruiter in Oregon.

38. As an IHS recruiter, DeCarvalho's primary job duties included calling hospitals, speaking with potential medical personnel, and giving them the opportunity to work.

39. As an IHS recruiter, DeCarvalho would screen applicants and refer them to hiring facilities' representatives who would ultimately decide whether to hire the medical personnel.

40. As an IHS recruiter, DeCarvalho's screening and recruiting process was routine and largely governed by standardized plans and checklists created by IHS.

41. All of IHS's recruiters perform substantially similar screening processes using forms and checklists developed by IHS.

42. Every element of a recruiter's job was predetermined by IHS, including the schedule of their work and related work duties.

43. No advanced degree is required to become a recruiter for IHS.

44. To the extent these recruiters make "decisions," the decisions do not require the exercise of independent discretion and judgment.

45. Instead, IHS's recruiters apply well-established procedures.

46. When IHS recruiters perform their work, they do so using established guidelines and predetermined parameters.

47. IHS recruiters are not permitted to deviate from established guidelines.

48. IHS recruiters attended mandatory meetings and workshops which outlined their duties.

49. IHS's recruiters' primary duties are not management.

50. IHS's recruiters' primary duties do not include supervising other IHS employees.

51. With these job duties, IHS's recruiters (including DeCarvahlo and the Putative Class Members) are clearly non-exempt from the FLSA's overtime provisions.

52. All of IHS's recruiters regularly work more than 40 hours a week.

53. Indeed, DeCarvahlo and the Putative Class Members were required to regularly work at least 10 hours a day for at least five days a week.

54. Despite regularly working overtime, IHS does not pay its recruiters overtime wages for their hours worked after 40 in a workweek.

55. Instead, IHS pays recruiters a base salary.

56. As a result of IHS's uniform salary pay scheme, DeCarvalho and the Putative Class Members were denied the overtime pay they are owed under the FLSA.

57. IHS keeps accurate records of the hours its recruiters work.

58. IHS also keeps accurate records of the amount of pay recruiters receive.

59. Despite knowing the FLSA's requirements and that its recruiters regularly worked more than 40 hours in a workweek, IHS did not pay DeCarvalho and the Putative Class Members overtime wages.

## COLLECTIVE ACTION ALLEGATIONS

60. DeCarvalho incorporates all other paragraphs by reference.

61. DeCarvalho brings his FLSA claims as a collective action on behalf of himself and the Putative Class Members.

62. The Putative Class Members are uniformly victimized by IHS's salary with no overtime pay scheme, which is in willful violation of the FLSA.

63. Other Putative Class Members worked with DeCarvalho and indicated they were paid in the same manner, performed similar work, and were subject to IHS's same salary with no overtime pay scheme.

64. Based on his experience with IHS, DeCarvalho is aware IHS's illegal practices were imposed on the Putative Class Members.

65. The Putative Class Members are similarly situated in all relevant respects.

66. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

67. Rather, IHS's uniform salary with no overtime pay scheme renders DeCarvalho and the other Putative Class Members similarly situated for the purposes of determining their right to overtime pay.

68. Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent collective treatment.

69. IHS's records reflect the number of hours worked each week by the Putative Class Members.

70. IHS's records also show the Putative Class Members were paid a salary with no overtime for their overtime hours.

71. The back wages owed to DeCarvalho and the other Putative Class Members can be calculated using the same formula applied to the same records.

72. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to IHS's records, and there is no detraction from the common nucleus of liability facts.

73. Therefore, the issue of damages does not preclude collective treatment.

74. DeCarvalho's experiences are therefore typical of the experiences of the Putative Class Members.

75. DeCarvalho has no interest contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

76. Like each Putative Class Member, DeCarvalho has an interest in obtaining the unpaid wages owed under federal law.

77. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

/ / /

78. Absent this collective action, many Putative Class Members will not obtain redress for their injuries, and IHS will reap the unjust benefits of violating the FLSA.

79. Further, even if some of the Putative Class Members could afford individual litigation, it would be unduly burdensome to the judicial system.

80. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

81. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

82. Among the common questions of law and fact are:

    a. Whether IHS applied its salary with no overtime pay scheme uniformly to the Putative Class Members;

    b. Whether IHS misclassified DeCarvalho and the Putative Class Members as exempt from the FLSA's overtime provisions;

    c. Whether DeCarvalho and the Putative Class Members are non-exempt employees entitled to overtime wages;

    d. Whether IHS's salary with no overtime pay scheme deprived DeCarvalho and the Putative Class Members of premium overtime wages they are owed under the FLSA;

    e. Whether IHS's violations of the FLSA resulted from a continuing course of conduct;

    f. Whether IHS's decision to misclassify DeCarvalho and the Putative Class Members as exempt employees was made in good faith;

    g. Whether IHS's decision not to pay DeCarvalho and the Putative Class Members overtime was made in good faith; and

       h.      Whether IHS's violations of the FLSA were willful.

83.    DeCarvalho knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

84.    As part of its regular business practices, IHS intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Putative Class Members.

85.    IHS's illegal salary with no overtime pay scheme deprived DeCarvalho and the Putative Class Members of the premium overtime wages they are owed under federal law.

86.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

87.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

88.    The Putative Class Members are known to IHS, are readily identifiable, and can be located through IHS's business and personnel records.

### IHS'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

89.    DeCarvalho incorporates all other paragraphs by reference.

90.    IHS knew it was subject to the FLSA's overtime provisions.

91.    IHS knew the FLSA required it to pay non-exempt employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

92.    IHS knew each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it expected and required these workers to do so.

PAGE 10 – COLLECTIVE ACTION COMPLAINT

93. IHS knew it paid the Putative Class Members a salary with no overtime pay.

94. IHS knew the Putative Class Members' primary duties do not include supervising any IHS employees.

95. IHS knew DeCarvalho and the Putative Class Members' primary duties were not management.

96. IHS knew the Putative Class Members' primary duties do not include exercising independent discretion or judgment with respect to matters of significance.

97. IHS knew the Putative Class Members primarily performed non-exempt work.

98. Nonetheless, IHS uniformly misclassified the Putative Class Members as exempt and refused to pay them overtime.

99. IHS's decision to misclassify DeCarvalho and the Putative Class Members as exempt employees was neither reasonable, nor was the decision to misclassify these employees as exempt made in good faith.

100. Likewise, IHS's failure to pay DeCarvalho and the Putative Class Members overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

101. IHS knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

102. Indeed, IHS did not investigate whether its recruiters were non-exempt under the FLSA.

103. And IHS failed to conduct a time study of how much work its recruiters performed which required independent judgment.

104. Instead, IHS willfully violated the FLSA with respect to DeCarvalho and the Putative Class Members.

## CAUSE OF ACTION
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

105. DeCarvalho incorporates all other paragraphs by reference.

106. DeCarvalho brings his FLSA claims as a collective action on behalf of himself and the other Putative Class Members.

107. IHS violated, and is violating, the FLSA by employing non-exempt employees (DeCarvalho and the Putative Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

108. IHS's unlawful conduct harmed DeCarvalho and the other Putative Class Members by depriving them of the overtime wages they are owed.

109. Accordingly, DeCarvalho and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

110. DeCarvalho demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, DeCarvalho individually, and on behalf of the Putative Class Members, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Putative Class Members allowing them to join this action by filing a written notice of consent;

/ / /

/ / /

b.  An Order pursuant to Section 16(b) of the FLSA finding IHS liable for unpaid overtime wages due to DeCarvalho and the Putative Class Members, plus liquidated damages in amount equal to their unpaid compensation;

c.  A Judgment against IHS awarding DeCarvalho and the Putative Class Members all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

d.  An Order awarding attorney's fees, costs, and expenses;

e.  Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Dated: August 4, 2023.                     Respectfully submitted,

**ALBIES, STARK & GUERRIERO**

By: */s/ Whitney Stark*
**Whitney Stark**, OSB No. 090350
whitney@albiesstark.com
1 SW Columbia Street, Suite 1850
Portland, Oregon 97204
Tel: (503) 308-4770
Fax: (503) 427-9292
*Local Counsel for Plaintiff*

**Michael A. Josephson**\*
mjosephson@mybackwages.com
**Andrew W. Dunlap**\*
adunlap@mybackwages.com
**Richard M. Schreiber**\*
rschreiber@mybackwages.com
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300

**Richard J. (Rex) Burch**\*
rburch@brucknerburch.com
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025

Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**